Filed 2/16/23

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re A.A. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E079176 |
| Plaintiff and Respondent, | (Super. Ct. No. INJ1800358) |
| v. | OPINION |
| C.G. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County. Susanne S. Cho, Judge. Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant, C.G.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant, R.A.

Teresa K.B. Beecham, County Counsel, Minh C. Tran and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent

# I.

## INTRODUCTION

C.G. (Mother) and R.A. (Father) appeal the juvenile court's order terminating their parental rights to three of their minor children. They contend the juvenile court erroneously found that the Indian Child Welfare Act (ICWA) does not apply because the children are not Indian children.[1] We disagree and affirm.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

The parents' five children, P., A., Ro., Ri., and N., were detained, removed from Mother's care, and adjudged dependents of the juvenile court.[2] (See Welf. & Inst. Code, § 300.) The court ordered reunification services for Mother while the children were placed in foster care.

Father's parents repeatedly denied any Indian ancestry, but Mother reported she was affiliated with the Jemez Pueblo tribe in New Mexico. Father's whereabouts were unknown at the time so he could not be contacted to discuss whether he had Indian ancestry, although he eventually denied having any Indian ancestry or tribal affiliation.

---

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code. Because ICWA uses the term "Indian," we do so on occasion as well, not out of disrespect, but because of the need for clarity and consistency, even though we recognize that other terms, such as "Native American" or "indigenous," are preferrable.

[2] This appeal concerns only N., H., and A., and whether the juvenile court properly found that ICWA does not apply because they are not Indian children. We therefore discuss only the facts relevant to the issue as it relates to N., H., and A.

The juvenile court found that the children may be Indian children and ordered notice to be reported to the Jemez Pueblo tribe and the Bureau of Indian Affairs (BIA).

An ICWA notice was mailed to the Jemez Pueblo tribe and the BIA in January 2019. The Jemez Pueblo tribe requires individuals to have a 1/4 Jemez Pueblo blood quantum. About a week later, Mother provided verification of her tribal registration status with the Jemez Pueblo tribe, which confirmed she is an enrolled member of the tribe because her Jemez Pueblo blood quantum is over 1/4.

Around the same time, a social worker from the Riverside County Department of Public Social Services (the Department) contacted the Jemez Pueblo and was told that none of the children were registered members of the tribe. The Department later received a letter from the Governor of the Jemez Pueblo, which stated that the children "are eligible to be *naturalized* members with the Pueblo of Jemez." (Italics added.)

Mother gave birth to H. in April 2019. He remained in Mother's care until he was detained and removed from her care about two months later.

Mother subsequently told the juvenile court that she was a member of the Jemez Pueblo and that P. was the only one of her children who was a registered member. Mother said that P. had to go to New Mexico to enroll with the tribe, but she had not done so.

The social worker reported she had contacted Annette Gachupin, a Child Advocate for the Jemez Pueblo and the tribe's ICWA Representative, about the children's tribal status and was awaiting a response. The juvenile court found that ICWA might apply and

3

ordered reunification services for Mother. In the meantime, the social worker called Gachupin several times to discuss the children's ICWA placement approval but was still awaiting a response.

In May 2020, the social worker spoke with Gachupin. Gachupin stated that she agreed with the children's placement and confirmed that Mother is an enrolled member of the Jemez Pueblo tribe. She explained, however, that the children were not eligible to become registered members of the tribe because their blood quantum was too low to meet the Jemez Pueblo's requirements for tribal membership. Instead, the children were eligible for "naturalization," which would only qualify them for tribal health services while excluding them from receiving federal funds that Jemez Pueblo members receive. Gachupin informed the Department that the children did not need to go to New Mexico to be naturalized and that Mother could complete the process through paperwork. Gachupin stated that "the Jemez Pueblo Tribe would not be intervening on the behalf of the children as they would only be naturalized."

In May 2020, the social worker explained the naturalization process to Mother, who wanted to naturalize the children. The social worker gave Mother the contact information for the Jemez Pueblo representative who could assist her with the naturalization process. Mother, however, had yet to begin the process by December 2020.

In January 2021, the juvenile court found that ICWA applied and that the children were Indian children. The children were returned to Mother's care.

4

In June 2021, however, the children were again removed from Mother's care. The juvenile court ordered them detained. In doing so, the juvenile court found that ICWA applied and that the children were Indian children.

The social worker later asked Mother whether she intended to naturalize the children with the Jemez Pueblo tribe. She said she did not intend to because she would not receive any benefits from the tribe and she was already receiving benefits from a local tribe. Mother never completed the paperwork to have the children naturalized with the Jemez Pueblo tribe.

In September 2021, the Department contacted Gachupin again to clarify the children's status with the tribe. Gachupin stated that P. was previously enrolled with the tribe, but her membership was updated to "naturalized member" because her blood quantum was too low. Gachupin again confirmed that the Jemez Pueblo tribe would not intervene because the children could only be naturalized members of the tribe.

Shortly afterward, the Department asked the juvenile court to find that ICWA did not apply because the children are not Indian children. The parents did not object, nor did the children's attorney. The juvenile court found that the children are not Indian children and therefore ICWA does not apply.

After a hearing under Welfare and Institutions Code section 366.26, the juvenile court terminated the parents' parental rights to A., N., and H., and freed them for adoption. The proceedings for the three other children were continued. Parents timely appealed.

DISCUSSION

Mother, with Father joining, argues that the juvenile court erroneously found that ICWA does not apply and thus the dispositional orders and the order terminating their parental rights must be reversed. We disagree.[3]

We first reject parents' challenge to the dispositional orders made before the section 366.26 hearing. "The first appealable order in a dependency case is the dispositional order." (*In re T.W.* (2011) 197 Cal.App.4th 723, 729.) The 60-day deadline to appeal the dispositional orders expired long ago. (See California Rules of Court, rule 8.406(a)(1).) "An appeal from the most recent order in a dependency matter may not challenge earlier orders for which the time for filing an appeal has passed." (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018.) Rather, "an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355.) Because parents did not timely appeal from the dispositional orders, they forfeited any challenge to the orders, which we lack jurisdiction to review. (*Ibid.*; accord, *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1149-1151.)

As for parents' ICWA challenge, we reject it on the merits. ICWA applies in a dependency proceeding only if an "Indian child" is involved. (*In re O.K.* (2003) 106

---

[3] We assume without deciding that parents did not forfeit the issue, as the Department contends.

Cal.App.4th 152, 155.) "ICWA defines an 'Indian child' as a child who is either (1) 'a member of an Indian tribe' or (2) 'eligible for membership in an Indian tribe and … the biological child of a member of an Indian tribe.' [Citation.] Conversely, if the child is not a tribe member, and the mother and the biological father are not tribe members, the child simply is not an Indian child." (*In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1520.)

However, ICWA does not define "member of a tribe" or "eligible for membership in an Indian tribe." (*In re K.P.* (2015) 242 Cal.App.4th 1063, 1071.) Instead, Indian tribes determine whether a child is a member of the tribe or eligible for membership. (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 702.) Each tribe has "sole authority" to determine tribal eligibility criteria and who meets them. (*In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1300.) A tribe's determination a child is a tribal member or eligible for membership is therefore "'conclusive.'" (*In re Francisco W.*, *supra*, at p. 702.) This means that "'[t]he only relevant factor'" for determining tribal membership is "'whether the tribe verifies that the child is a member or eligible for membership.'" (*In re K.P.*, *supra*, at p. 1072.)

We review the juvenile court's findings that a child is not an Indian child and thus ICWA does not apply for substantial evidence. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) "'We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of

7

affirmance.'" (*Ibid*.) Parents therefore bear the burden of showing that the evidence was insufficient to support the juvenile court's findings. (*Ibid*.)

Substantial evidence supports the juvenile court's finding that N., H., and A. are not "Indian children" for ICWA purposes. There is no evidence in the record that Father has Indian ancestry and parents do not suggest that he may. Although Mother is a member of the Jemez Pueblo, her children are not eligible for membership with the tribe because their blood quantum is too low.

At oral argument, we advised the parties that we found the record on Mother and her children's blood quantum levels to be conflicting and confusing. Mother's "Certificate of Indian Blood" from the United States Department of the Interior states that Mother has ½ "Jemez Indian Blood," but Gachupin repeatedly told the social worker that Mother's Jemez Pueblo blood quantum was ¾. Under either scenario, however, the children's Jemez Pueblo blood quantum would satisfy the tribe's ¼ blood quantum requirement, but Mother never challenged the tribe's conclusion that the children's Jemez Pueblo blood quantum is too low to become a tribal member.

Mother argues that blood quantum is not the only factor tribes consider to determine membership. That may be, but the Jemez Pueblo requires a blood quantum of at least one-quarter Jemez Pueblo to enroll as a member of their tribe. In response to an ICWA inquiry, Gachupin confirmed that the children could not become enrolled or registered members of the tribe, but could only be "naturalized" with the tribe, because their Jemez Pueblo blood quantum is too low.

Relying heavily on a law review article, Mother argues that this rendered the children Indian children under ICWA. (See *American Indian Sovereignty and Naturalization: It's a Race Thing* (2001) 80 Neb. L. Rev. 171, 195.) But, again, the Jemez Pueblo confirmed that the children are ineligible to enroll as members of the tribe because their blood quantum is too low. Thus, although the children are eligible to be "naturalized" with the tribe, they are not "eligible for membership in" the tribe. If the children were eligible to become members of the tribe, Gachupin presumably would have relayed that information to Mother or the Department.

The tribe has exclusive authority to determine eligibility criteria for membership. (*In re Francisco W.*, *supra*, 139 Cal.App.4th at p. 702.) We "may not substitute [our] own determination for that of the tribe regarding a child's membership or eligibility for membership in a tribe." (*In re K.P.*, *supra*, 242 Cal.App.4th at p. 1074.) The tribe unambiguously confirmed that Mother's children are not members of the tribe and are not eligible to become members. That the children can become "naturalized members" of the tribe is insufficient to trigger "ICWA's substantive and procedural safeguards." (*In re Ezequiel* (2002) 81 Cal.App.5th 984, 1002.)

The Jemez Pueblo's determination that N., H., and A. are not members of the tribe and are not eligible to become members was conclusive and binding on the trial court, and is conclusive and binding on us. (*Ibid.*) Substantial evidence thus supports the juvenile court's findings that N., H., and A. are not Indian children and thus ICWA did not apply to their dependency proceedings.

9

IV.

DISPOSITION

The juvenile court's dispositional orders and order terminating parental rights to

N., H., and A. are affirmed.

CERTIFIED FOR PUBLICATION

CODRINGTON
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.

10